```
                UNITED STATES DISTRICT COURT          FILED
                NORTHERN DISTRICT OF ALABAMA
                    NORTHEASTERN DIVISION          02 MAR -1 PM 2:30

TRAVELER'S INDEMNITY COMPANY )                     U.S. ... COURT
OF ILLINOIS and AMERICAN TRIM, )                   ND OF ALABAMA
L.L.C.,                        )
                               )
            Plaintiffs,        )
                               )
vs.                            )    Civil Action No. CV-00-S-3481-NE
                               )
GARY D. PUCKETT, ROY E.        )
GARRISON, JOHN MICHAEL         )
ISBELL, WAREHOUSE PARK         )                   ENTERED
SOUTH, GRAHAM & COMPANY,       )
INC., C & C PALLET, INC.,      )
                               )                   MAR - 1 2002
            Defendants.        )
```

## MEMORANDUM OPINION

This action is before the court on the motion for summary judgment filed by defendant Graham & Company, Inc. Upon consideration of the pleadings, briefs, and evidence submitted, the court concludes that the motion is due to be denied.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, cross-claim, or counterclaim on which there is no genuine issue of material fact, and upon which the moving party is entitled to prevail as a matter of law.

> The judgment sought *shall be rendered forthwith if* the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c) (emphasis supplied). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's



case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The motion pierces the pleadings, and "strikes at the heart of the claim. In effect it argues that as a matter of law upon admitted or established facts the moving party is entitled to prevail." Charles Alan Wright, *Law of Federal Courts* § 99, at 705 (5th ed. 1994).

The moving party bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See, e.g., Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the opposing party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the opposing party must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593. The non-moving party must put forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-moving party, and to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692

2

F.2d 1321, 1324 (11th Cir. 1983). Moreover, inferences that are "merely colorable," *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir. 1993), *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, do not create a genuine issue of material fact. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (quotation marks and citations omitted)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

3

With the foregoing standards in mind, the following facts either are not disputed or are stated in a light most favorable to plaintiffs.

## II. STATEMENT OF FACTS

Plaintiff American Trim Company, L.L.C. ("American Trim") executed a commercial real estate lease agreement in February of 1997 with defendant Warehouse Park South.[1] The leased space was to be used as a storage facility for American Trim's metal trim products.[2] The lease, which was signed on behalf of defendant Warehouse Park South by defendant John M. Isbell, names defendant Graham & Company, Inc. ("Graham"), as the "agent" for Warehouse Park South for purposes of that lease agreement.[3] Isbell, along with defendants Gary D. Puckett and Roy E. Garrison, has an ownership interest in Warehouse Park South.[4]

Defendant C&C Pallet, Inc. ("C&C") shared the warehouse space with American Trim, although the leased spaces were separated by a wall.[5] Despite that physical barrier, on December 10, 1998, a fire started in C&C's warehouse space that spread into American Trim's warehouse space, and destroyed property owned by American Trim.[6] Plaintiffs contend that, had a sprinkler system installed in the warehouse space functioned properly, "the fire would have been contained and extinguished early ... [and] the damage to American Trim's property would have been greatly reduced."[7]

Plaintiffs filed suit in this court, invoking the court's diversity jurisdiction pursuant to 28

---

[1] *See* Plaintiffs' Brief in Response, Ex. 1 (lease agreement).
[2] Complaint ¶¶ 12-13.
[3] Plaintiffs' Brief in Response, Ex. 1 (lease agreement), at 1.
[4] *See* Complaint ¶¶ 3-5.
[5] *See id.* ¶ 14.
[6] *See id.* ¶ 15.
[7] *Id.* ¶ 19.

4

U.S.C. § 1332, and claiming that, when American Trim leased the property, a "wet pipe sprinkler system" was in place at the warehouse.[8] Plaintiffs also claim that, prior to executing the lease, American Trim specifically inquired as to whether the sprinkler system was operational.[9] American Trim asserts that the warehouse's owners — Puckett, Isbell and Garrison, along with Graham (the warehouse leasing agent) — affirmed that the system was in working order.[10] In fact, the sprinkler system was not operable on the date the lease was executed.[11] Moreover, American Trim claims that "sometime prior to the fire a portion of the sprinkler system located in the section of the Warehouse occupied by C&C had been dismantled."[12] Plaintiffs contend that American Trim would not have signed the lease agreement had it known that the sprinkler system was not operational.[13]

Plaintiff Travelers Indemnity Company of Illinois ("Travelers") provides commercial property insurance coverage to American Trim under policy number 630-373X8466.[14] To date, plaintiff Travelers has paid more than $860,000.00 to American Trim for the damage the December 1998 fire caused to American Trim's property.[15] Travelers is subrogated in this action to all claims for damages made against defendants by American Trim. American Trim also seeks to recover $25,000.00, the amount of its deductible under the Travelers insurance policy.[16]

### III. DISCUSSION

Plaintiffs direct just one of the four counts contained in their complaint against defendant

---

[8] *Id.* ¶ 16.
[9] *See id.* ¶ 17.
[10] *See id.* ¶ 16.
[11] *See id.* ¶ 17.
[12] *Id.* ¶ 18.
[13] *See id.* ¶ 17.
[14] *See id.* ¶ 11.
[15] *See id.* ¶20.
[16] *See id.* ¶ 21.

5

Graham & Company, Inc. ("Graham"). In Count I, plaintiffs claim that Graham, along with defendants Puckett, Garrison, Isbell, and Warehouse Park South, is liable for misrepresentations it allegedly made to American Trim relating to the sprinkler system installed in the warehouse later destroyed by fire.[17] Specifically, plaintiffs claim that Graham, among other defendants, knew or "should have known that the sprinkler system in the Warehouse was not operational at the time American Trim entered into the lease agreement."[18] Plaintiffs also assert that Graham knew or should have known that the "existence of an operational sprinkler system was material to American Trim's execution of the lease agreement."[19] Further, plaintiffs maintain that Graham, along with other defendants, "negligently failed to investigate whether the sprinkler system was operating properly, and ... failed to take the proper steps to correct and repair the sprinkler system during the time they owned or were in possession of the Warehouse, or when they made the Warehouse available for lease."[20]

Graham seeks summary judgment as to the negligent misrepresentation claim brought against it by plaintiffs. Graham argues that plaintiffs have not submitted any evidence to demonstrate the elements of a negligent misrepresentation claim, also known as fraudulent misrepresentation, under Alabama law. *Compare Industrial Partners, Ltd. v. CSX Transportation, Inc.*, 974 F.2d 153, 157 (11th Cir. 1992) (detailing elements of negligent misrepresentation claim under Ala. Code § 6-5-101), *with Resolution Trust Corp. v. Mooney*, 592 So. 2d 186, 188 (Ala. 1991) (detailing the elements of a fraudulent misrepresentation claim pursuant to Ala. Code § 6-5-101). Graham asserts, specifically, that it did not "have a listing agreement for the property," that it "did not have any involvement in

---

[17] *See* Complaint at 6.
[18] *Id.* ¶ 23.
[19] *Id.*
[20] *Id.*

leasing the property," that it had "no involvement in the transaction [in] which the property was leased to American Trim," that it "never put any tenants into the property," that no one from Graham "ever met with any representative of American Trim on the premises of the property," that "[n]o one with Graham & Company ever made any representation of any kind to American Trim," and that "[n]o one at Graham has any knowledge of the terms in the lease between Warehouse Park South and American Trim."[21]

The court notes, however, that the heading on American Trim's lease agreement for the warehouse property reads, in large lettering, "Graham & Company, Inc.," and lists that company's Birmingham, Alabama address, telephone, and fax numbers below it.[22] The lease specifically refers to the fact that the lessee, American Trim, must pay its monthly rent to Graham,[23] that Graham is Warehouse Park South's "agent,"[24] and further, that the lessee — American Trim — is responsible for keeping "all sprinklers ... in such good order and repair ...."[25]

Further, although American Trim's property was stored in the warehouse named Building #3, a handwritten amendment to American Trim's lease states that the leased space is located in "#1 North End Building #1."[26] This written designation is of significance because, prior to American Trim's execution of the lease agreement, Graham published an advertisement about various buildings at Warehouse Park South, which included a photo and bullet-point description of "Building #1."[27] The advertisement states that Building #1 has a "Wet sprinkler system" in it.[28] The description for

---

[21] Plaintiffs' Brief in Response at 1-2.
[22] *See* Plaintiffs' Response in Opposition, Ex. 1 (lease agreement), at 1.
[23] *See id.*, at lines 1-4.
[24] *See id.*, at 1.
[25] *Id.* at 2, lines 45-47.
[26] *See id.* at 5, Ex.1.
[27] *See id.* at Ex. 2.
[28] *See id.*

7

Building #3 contains no information about a sprinkler system. The advertisement clearly denotes Graham as the lease agent for the property, and includes the name of a specific contact (Jack Brown), and Graham's Birmingham, Alabama address, telephone, and fax numbers — the same information included at the top of American Trim's lease to the warehouse space.[29] Plaintiffs assert that American Trim relied on this advertisement, believing that the "building in which its materials would be housed would have a working sprinkler system."[30]

Under Alabama law, the elements of a fraudulent misrepresentation claim require that a defendant has made "a false representation, (2) concerning a material existing fact, (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Ex parte Alabama Department of Transportation*, 764 So. 2d 1263, 1269 (Ala. 2000) (quoting *Baker v. Bennett*, 603 So. 2d 928, 935 (Ala. 1992)); *see also Ford Motor Co. v. Adamson Ford, Inc.*, 717 So. 2d 781, 788 (Ala. 1997) (citing *Spring Hill Lighting & Supply Co. v. Square D Co.*, 662 So. 2d 1141 (Ala. 1995)). The Alabama Supreme Court has "held that 'in order for promises or opinions to constitute fraudulent misrepresentations, there must have been at the time the representations were made an intention not to do the act promised, and such promise or opinion must have been given with intent to deceive.'" *Ex parte Alabama Department of Transportation*, 764 So. 2d at 1269 (quoting *Army Aviation Central Federal Credit Union v. Poston*, 460 So. 2d 139, 143 (Ala. 1984) (internal quotation marks and citation omitted)).

At issue is the first element of that prima facie showing: whether Graham made a false representation to American Trim.[31] Graham argues, and plaintiffs concede, that Graham "did not make any direct oral statements to American Trim regarding the existence of a sprinkler system in

---

[29] *See id.*

[30] *See id.* at 5.

[31] *See* Brief in Support (doc. no. 47), at 5.

8

the building America Trim leased from Warehouse Park South."[32] The court disagrees, however, that plaintiffs have failed to establish that "anyone from Graham ever made any representation, of any kind, to the plaintiff[s]."[33]  As the Alabama Supreme Court explained:

> We cannot limit our inquiry into misrepresentation ... to a single fact or statement. *Misrepresentation may take many forms, a verbal misrepresentation being just one form.* The statements and conduct of the parties must be viewed in their entirety to adequately resolve the question of whether a misrepresentation has occurred. *See Sharp Electronics Corp. v. Shaw*, 524 So. 2d 586 (Ala. 1987).

*Utah Foam Products, Inc. v. Polytec, Inc.*, 584 So. 2d 1345, 1351 (Ala. 1991) (emphasis supplied); *see also, e.g., Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000) (finding that a "statement" contained within an appraiser's report constituted fraudulent misrepresentation). Considering the facts in the light most favorable to plaintiffs, this court concludes, then, that "a reasonable fact finder evaluating the evidence could draw more than one inference from the facts," and that these inferences introduce a genuine issue of material fact as to the alleged negligent representation by Graham to American Trim. *Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

## IV. CONCLUSION

For the foregoing reasons, defendant Graham & Company, Inc.'s motion for summary judgment is due to be denied. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this ___1st___ day of March, 2002.

_____
United States District Judge

---

[32] Plaintiffs' Response in Opposition, Ex. 1 (lease agreement), at 4-5.

[33] Brief in Support (doc. no. 47), at 5.

9